UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Orrick, Judge

UNITED STATES OF AMERICA,    )
                          )
        Plaintiff,     )
                          )
  VS.                )    **NO. CR 19-00040 WHO-1**
                          )
AHMAD WAGAAFE HARED,      )
                          )
        Defendant.     )
_____)
UNITED STATES OF AMERICA,    )
                          )
        Plaintiff,     )
                          )
  VS.                )    **NO. CR 19-00040 WHO-2**
                          )
MATTHEW GENE DITMAN,      )
                          )
        Defendant.     )
_____)
UNITED STATES OF AMERICA,    )
                          )
        Plaintiff,     )
                          )
  VS.                )    **NO. CR 19-00676 WHO**
                          )
ANTHONY FRANCIS FAULK,    )
                          )
        Defendant.     )
_____)

San Francisco, California
Thursday, April 18, 2024

**TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS**

**(APPEARANCES ON THE FOLLOWING PAGE)**

Remotely Reported:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
                 U.S. District Court - Official Reporter

**APPEARANCES:**  (via videoconference)

For Plaintiff:
                        ISMAIL J. RAMSEY
                        United States Attorney
                        450 Golden Gate Avenue
                        San Francisco, California  94102
                    BY: **LLOYD FARNHAM**
                        **ASSISTANT UNITED STATES ATTORNEY**

For Defendant Hared:
                        LAW OFFICES OF GAIL SHIFMAN
                        2431 Fillmore Street
                        San Francisco, California  94115
                    BY: **GAIL SHIFMAN, ATTORNEY AT LAW**

For Defendant Ditman:
                        JODI LINKER
                        Federal Public Defender
                        450 Golden Gate Avenue - 19th Floor
                        San Francisco, California  94102
                    BY: **ANGELA CHUANG, ATTORNEY AT LAW**

For Defendant Faulk:
                        WIRSCHING LAW
                        2600 West Olive Street - 5th Floor
                        Burbank, California  91505
                    BY: **JENNIFER J. WIRSCHING, ATTORNEY AT LAW**

Also Present:          **VICTIM NA and VICTIM JD**

| | |
|---|---|
| 1 | **Thursday - April 18, 2024**                    **2:24 p.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | **---oOo---** |

4    **THE CLERK:** So this is -- this matter is in combined

5 cases on 19-40, which is United States versus Ahmad Hared and

6 Gene Ditman and case number 19-676, which is United States

7 versus Anthony Francis Faulk.

8    Counsel, if you would please, state your appearance for

9 the record as well as pro se parties.

10    **MR. FARNHAM:** Good afternoon, Your Honor, Lloyd

11 Farnham appearing for the United States.

12    **MR. KOBRE:** Good afternoon, Your Honor, Elisha Kobre

13 on behalf of victim Joshua Davis.

14    **MS. WIRSCHING:** Good afternoon, Your Honor, Jennifer

15 Wirsching for Mr. Faulk.

16    **MS. CHUANG:** Good afternoon, Your Honor, Angela Chuang

17 for Mr. Ditman. I'm waiving his appearance today.

18    **MS. SHIFMAN:** Good afternoon, Your Honor, Gail Shifman

19 on behalf of Mr. Hared, and I too am waiving his appearance

20 with his permission.

21    **MR. ANDREWS:** Good afternoon, Your Honor, Nathaniel

22 Andrews, pro se, as a victim.

23    **THE COURT:** All right. Good afternoon to you all.

24    So let me set the stage for what I understand the key

25 facts are and what I understand the law requires.

So, my understanding is that the two victims participated in the investigation involving the Defendants; gave the Government information about their stolen property; that they participated in the remission process; that they received updates about the cases, the pleas and the sentencings and received notice to submit proof of loss for the restitution.

They did not participate in the restitution process. Probation failed to provide them notice of the amounts that were subject to restitution submitted to Probation, and the amounts presented to the Court at sentencing significantly understated the loss that they believe they suffered.

So, does anybody have any anything to add to those facts? And by "add," I mean, did I state any of them incorrectly?

(No response.)

**MS. CHUANG:** I think I would just note that based on the Government's first filing in relation to these issues by AUSA Leach, the Government did point out that as to JD, his participation in the investigation was about a different crypto wallet than the two wallets that he is now claiming. So I would just add that clarification.

**THE COURT:** Okay. All right. So, here is what I understand this all means, the -- I don't have much discretion when it comes to restitution -- criminal restitution issues.

The Victim Witness Protection Act requires that victims discover further loss subsequent to sentencing in order to

address the restitution that was ordered at sentencing.

Here, the victims didn't discover further losses. They discovered that the amounts allowed at sentencing were, from their perspective, wrong but because they knew about the restitution process and chose not to participate, the first question of whether there is good cause to reopen, the Government totally fell down, I think, on its job with respect to this and Probation fell down on its job with respect to this.

But, so -- so there may well be good cause; but if there was, they didn't discover any further losses. They were the same losses that they knew about from the get-go.

And the Crime Victims Rights Act doesn't create substantive rights, but it respects the restitution rights that I just described. So there aren't new rights there.

So I think the answer at this point and the solution to this is contained in 18 U.S. Code Section 3771(d)(3), which is to file a writ of mandamus in the Ninth Circuit.

And that's the mechanism under the CVRA where victims are denied the right to full and timely restitution.

It is my understanding there is no time limit for those mandamus petitions challenging restitution orders under the CVRA.

And I think that's the way that it has to go. I don't think I have the discretion to make this determination. So

```
1    that's --
2              MR. FARNHAM:  Your Honor --
3              THE COURT:  Mr. Farnham, go ahead.  I will start with
4    you.
5              MR. FARNHAM:  Thank you.  I would like to offer a
6    slightly different way to look at it.
7         So, I am new to this case and I was reading all of the
8    materials in the last couple of days.  I'm covering for
9    Mr. Leach.
10        Here is how I see it and I think it would be an
11   appropriate path forward here -- I would suggest it is an
12   appropriate path forward.  Putting aside the CVRA issue, I
13   don't think we need to reach that, whether it is substantive or
14   procedural.  I think that is not what this is about.
15        I think that the 30 -- the 3664(d)(5), which is the
16   opportunity for victims to come back to the court when they
17   discover further losses, should apply here.  And there are two
18   triggers; right.
19        One is that further -- the victim subsequently discovers
20   further losses, and then from that point there is 60 days.  So
21   the trigger is discover further losses as Your Honor
22   appropriately points out.
23        The second trigger is there must be good cause for failure
24   to include those losses in the initial claims.
25        Let me deal with the restitution claim part first.  I
```

think that there is understandable confusion between remission and restitution.  Those processes were happening at the same time.

As I understand it, both of these victims submitted claims for remission to the FBI in order to get a piece of the forfeiture.

It's not always clear what those mean and how those are different to even experienced practitioners.

The victim notification system, which, of course, the Defense Counsel would rely on to say that they knew full well that they should have once and for all submitted restitution claims to the Government for submission to the Court before sentencing is -- is -- it is not at all clear.

And these are standard forms.  We -- the Government does their best to reasonably notify everyone of their rights and of every single proceeding; that they either have a right to be heard at or to be notified of.

It's an imperfect system.  I think that given the circumstances, given also the facts of this loss, which I will get to in a minute, I think it is reasonable to assume, it is reasonable for the Court to find that there is good cause for them not asking -- doing a formal restitution request to the Government for us to submit in connection with the sentencing.

What looks like happened to me is that the Government and the FBI did the best we could without that to try to look at

from early in the investigation what the value of the Ethereum was. I'm just guessing. I don't know where those numbers come from either but that's what it looks like. So I think there is good cause to re-open this issue.

Second question is: Are we talking about the discovery of further losses? It's not a typical situation where there is an investment -- I'm not even sure what the typical situation for this is -- but there are certainly situations I could foresee where the restitution order issued by the Court includes one of the stolen houses transferred away from the Defendant.

The Defendant realizes -- the -- excuse me -- the victim -- the victim knows full well that two houses were subject to the crime but learns that the restitution order -- for one reason or another, they are not necessarily a party to that hearing -- includes one of the subject properties.

Is it discovering an additional loss if they realize that both of the houses that were part of their loss should have been included? I think that would fit under the new discovery rule of Section (d)(5).

Here, I guess one way to categorize the discovery is that the Government had it all wrong and calculated the -- calculated the restitution based on early information discovered years ago in the case and didn't account for the fact that it was Ethereum that was now at the time of sentencing worth many times more.

        The law -- the victims point out the law is crystal clear
is that the loss should be -- if you don't get the property
that was stolen back, the loss should be the greater of either
the value of it at the time or the value at the time of
sentencing.  The law is pretty unambiguous there.

        So, the question is:  Is that discovery -- that the
restitution order here was absolutely inadequate to cover their
loss, both legally and factually -- is that discovery enough to
trigger the sixty-day time for them to seek new claims and ask
to amend it?

        I think it's a unique situation.  I think the basis is
there for the Court to do it.  And I think that there's also --
like I said, I think there is a basis for finding good cause
that the original restitution claim -- they shouldn't be barred
by not seeking restitution at the -- with the victim witness
system.  I think there's a basis for the Court to find good
cause there too.

        **THE COURT:**  Well, you know, I don't disagree that the
Government just fell down on the job and -- in this case --
every single -- I -- it's just -- it's hard for me to believe
how this happened.

        It's also hard for me to believe if I was -- if I had
suffered the loss that the victims were aware of, that I
wouldn't have been more attentive to the notices that I was
getting and to the -- to the sentencing.

But -- and so I'm -- I -- and -- I certainly don't think that the Defendants are entitled to any benefit here because of -- because that's the original sin.

I'm trying to figure out my -- whether I have any discretion at all in light of the law and this -- and the (d)(5) language.

I don't think that -- discover further losses is -- is triggered by these facts.  And so, anyway, that's where I am.  I appreciate the argument and the equities sort of although I would be interested in hearing from the -- maybe first from Mr. Kobre or whoever -- I guess it is Mr. Kobre --

**MR. KOBRE:**  Yes, it is, Your Honor.

**THE COURT:**  -- from NA on the second part of my concern, which is why there wasn't more attention paid by the victims to what was going on with respect to the sentencing.

**MR. KOBRE:**  Yes, Your Honor, Elisha Kobre here on behalf of victim Davis.  Thank you, Your Honor.

With respect to the question about, you know, sort of diligence, I think Mr. Davis was diligent.  He was extremely diligent in his cooperation with the FBI during the course of the investigation.

**THE COURT:**  If you would just focus on this thing that I'm totally concerned about, which is -- two things, one is the discovery of further losses, which is related to why -- why not respond to the notices when it comes time to -- for sentencing

and the notices about restitution?

**MR. KOBRE:**  Your Honor, Mr. Davis is not a lawyer.  He submitted and put a lot of information into a petition for remission and forfeiture.

He was not represented at the time.  And, you know, to us, who deal in the criminal space, we obviously know there is a difference between forfeiture and restitution, what needs to be done; but Mr. Davis -- well before any of the sentencings here -- submitted a petition, a written document, to the Government spelling out his losses and making the claim for the full amount.

And so in his mind that was -- that was sufficient to -- to, you know, bear out his claim for restitution.

If I could just briefly address, Your Honor -- and I appreciate what the AUSA said; but if I could just address Your Honor's concern about your authority to act here.

I agree with what the AUSA said with respect to 3446(d)(5), but I think as we argued in our brief Your Honor clearly has authority under the Crime Victims Rights Act, particularly under Section (d)(3).

The cases make very clear that the Crime Victims Rights Act created a new -- a new right of action in essence, a new ability to bring a motion seeking -- seeking to vindicate the rights that are laid out in the CVRA, one of which is full and timely restitution.

Now, that motion, which is called a motion for relief --
and it is in 3771(d)(3) -- is something that had not existed
before that time and it does not contain a time limitation.

It is a way for -- as the Second Circuit explained in the
*Federal Insurance* case -- it is a way for the victim to
vindicate his rights as exactly in this case.

Now, Your Honor referred to mandamus but mandamus is sort
of the second approach in a case where the victim is
unsatisfied with the district court's decision.

So when you read (d)(3), it says that the rights described
in subsection (a), which includes restitution, shall be
asserted in the district court. And then only if the -- it
said, the district court shall take up and decide any motion.
And if the district court denies the relief sought, then the
movant may petition for a mandamus.

So I think, Your Honor, we are in a position here where we
are following exactly what Congress intended under the CVRA.
There is a right that has been set forth, a right to full and
timely restitution. We are not asking for any change in
substance here whatsoever. This is purely a procedural matter,
which is exactly what the CVRA is aimed at.

And we are bringing the motion before the Court here. It
is before Your Honor well and proper to vindicate that right by
re-opening the sentence -- the judgments and correcting for
restitution.

1      **THE COURT:** Mr. Kobre, the difficulty -- I hear you.

2  I have been trying to track through this to figure it out, but

3  the 3771, the Crime Victims Right Act, doesn't create new

4  substantive rights.

5      It falls back into the way that I construe (d)(5) --

6  3664(d)(5). I agree with you on timeliness. I think I'm not

7  concerned about the timeliness issue. I'm concerned about the

8  other two things, and I'm not all that concerned about good

9  cause although I am somewhat.

10      **MR. KOBRE:** But, Your Honor, to be clear, so our

11  position is -- I mean, we agree with Your Honor that nothing

12  about the CVRA creates new substantive rights, but we are not

13  asking for a substantive; right.

14      We are simply asking for the rights as they are -- as the

15  AUSA pointed out. You know, the Government and us -- I mean, I

16  don't really think there is really any material argument to the

17  contrary -- is that restitution was not grant -- was not --

18  full and timely restitution was not ordered here.

19      And there is nothing in the CVRA that says that -- we are

20  talking about a time limitation. Your Honor I think is

21  referring to 3664(d)(5) to suggest that there is a sixty-day

22  time limit, but the motion that's -- it is a different motion

23  that's permitted under the CVRA.

24      **THE COURT:** I'm not worried about the time limit. I'm

25  really not. I'm worried about the other two things.

1      Let me hear from NA.

2      **MR. ANDREWS:**  Thank you, Your Honor.  Maybe I will

3  address your question about the further losses but if -- if I

4  can have permission, can I tell my story a little bit to

5  address your first issue, which is how did we get here and how

6  did we not pay attention to this kind of development.

7      **THE COURT:**  It's the second part -- the second part of

8  it is what I'm really interested in.  Particularly from you,

9  I'm curious about that.

10     **MR. ANDREWS:**  Yeah, so I think -- and I have a lot of

11  thanks for Mr. Farnham jumping in here and presenting kind of a

12  view that I think is consistent with what I have been trying to

13  argue in my petition and the reply brief which I submitted,

14  which is under seal.  So I'm still questioning whether or not

15  it got to you.  I'm hoping you did get to see it.

16     **THE COURT:**  It did.  Thank you.

17     **MR. ANDREWS:**  Okay.  So this has been a long saga

18  really.  And in the time since the theft until now, I went

19  through law school, graduated from law school, became a lawyer,

20  had three children, moved across the country two times, and

21  started a business.

22     And so when we are thinking about kind of the scope of

23  what's going on, it's -- it's hard to fit in also becoming a

24  criminal law expert, which is not in my practice area at all.

25     So, what -- I will just tell you what my perspective was

going through this.  After the theft, some time later, I was
contacted by the FBI; and I told them exactly what was taken.

And for me, it was one transaction, which you can see on
the blockchain, where 4,080 Ether disappears, right, from my
control.  And at that time it was a lot of money, and I
expected it to continue to grow as it has.

I told the FBI agent that from the very first instance,
and I sent an e-mail over to them highlighting and showing the
transactions and explaining what had happened.

I didn't think that the theft as to me was very
complicated because a lot of the factual details about how the
theft happened really happened to the victim JD because he was
holding on to the keys that access this because he had helped
me to get this.

So from my perspective, I thought the issue for me was
quite simple; one transaction, one theft, a lot of -- a lot of
property gone.

At every communication after that, I told the same story.
I submitted a detailed petition when arrests were made and
assets were seized with the remission petitions.

And exactly like Mr. Farnham noted, this is not an area
that I was familiar with.  There's remission, mitigation.  I
have now learned that there is restoration, and that has a
relationship with restitution but these are all different
things.

1    When I submitted those petitions, I didn't understand

2  exactly what they were.  I just tried to fill them out to the

3  best of my ability to say:  Here is exactly what was taken.

4  There was one property stolen at this time.  And I submitted

5  that kind of paperwork at least twice.

6    I also received another call from a case paralegal at --

7  from the DOJ kind of confirming what I had said, and I walked

8  through on the telephone, well, here is what happened.

9    So now we kind of fast forward after many years of --

10  after the arrests, we kind of sat waiting for the plea deals to

11  work out; and I was getting updates through VNS for many years

12  about, you know, scheduling delays, and I see these kind of

13  forum e-mails coming through.

14    So when I finally saw that there were pleas entered and

15  the sentencing was coming forward, I, like, started to pay

16  attention; but at that point when I got my first notification

17  requesting more information, what I thought to myself was for

18  me this is not a complicated issue.  It was one piece of

19  property.

20    I have told the FBI and the DOJ exactly what was taken

21  multiple times.  And so when I read those e-mails -- they do

22  say the victim impact statement is optional -- I just assumed

23  that they had the proper information.  It was one item that was

24  stolen.  I sent them the record on the blockchain, and I had

25  said it many times.

 1     It -- you know, if the conclusion is that that was a
 2 mistake, you know, so be it; but in my view, even as a lawyer
 3 today, I still don't understand how they wouldn't have the full
 4 information because I had already communicated it to them many
 5 times.  So I felt that that was unnecessary.
 6     Now, kind of addressing your question of with such a big
 7 number at stake -- and this feeds right into the next question
 8 of is this further losses -- up to this point I did not know
 9 about the Mandatory Victim Restitution Act, and I had no idea
10 that the proper way that is required to set restitution in this
11 case is based on the value of the property at the time of
12 sentencing because it is greater.
13     So, when we were going through this process, I assumed --
14 because I had done some research about -- you know, there were
15 other details about the case and how the Defendants had
16 breached into the private parties in order to facilitate the
17 fraud -- I had done some research.  I actually wrote a student
18 note about liabilities that could be extended to cloud service
19 providers and other things or even the wireless providers who
20 allowed the SIM swap hack to occur.
21     So I didn't have -- that research had shown me that I
22 wasn't clear on whether there would be any likelihood of the
23 property value at the time of sentencing being considered or
24 whether it would only be the property value at the time of
25 theft.

And what I thought was that the Department of Justice would know the law and that they would submit the proper materials to follow the law.

So, this whole time I felt like I had said exactly what I needed to say, and I didn't know how restitution should be set in relation to valuing the property at different times.

It was only after the restitution was set that I knew -- because I had spoken with victim JD and I knew how much was taken from him -- that I saw that the numbers were odd because I knew that the amount taken for me was much, much larger in relation to Mr. -- victim JD -- not to diminish his loss at all. He has gone through a lot with this -- but our restitution amounts were very similar.

And at that point I began to question because although I expected the Department of Justice to submit and follow the law correctly, at that point I was curious because I didn't understand how the restitution numbers could come out the way they did based on my understanding what was taken.

At that point -- you know, this is August 17th going forward -- I immediately started calling people. I had some calls with attorneys at the Department of Justice, Mr. Leach, and I began researching and through that research, that's when I learned of the Mandatory Victims Restitution Act.

So, that's kind of a story of how we got there. In my mind I had been telling in detail the Government, the

1  Department of Justice and the FBI agents exactly what was

2  taken; and I expected them to follow the law to set restitution

3  appropriately without me needing to become a restitution

4  expert.

5  Now in hindsight, I would do the research in advance and

6  get out in front of this. I just -- I didn't expect it to be

7  necessary, and I didn't know that the Mandatory Victims

8  Restitution Act unambiguously says you can use -- you are

9  required to use the value at the time of sentencing.

10  Now that leads to this question of further losses. I

11  think it kind of sets up what I'm going to say here is that I

12  did not know what the restitution amount should be.

13  I communicated to the Government what property was taken.

14  It was after restitution was set that I started to look at it,

15  and that's when I discovered that the value in the restitution

16  order does not reflect the property that I communicated to the

17  Government as required by the Mandatory Victims Restitution

18  Act.

19  And in my view, when you talk about should further losses

20  in a statute that is designed to protect the victims encompass

21  this scenario where you communicate exactly the correct

22  property that was taken but for some reason the value of that

23  property is completely wrong in the restitution order, that, to

24  me, is a discovery of further losses because the law recognizes

25  that loss.

The law says the loss is -- should be set based on the value at the time of sentencing, and the restitution order does not follow the law in that regard. And I didn't discover that until afterwards.

So I think in this limited circumstance where you have a victim who submitted the correct property that was taken but the value that ended up in the restitution order is incorrect, that's a discovery of further losses, losses that the Mandatory Victims Restitution Act require to acknowledge.

THE COURT: Okay.

MR. ANDREWS: I put in a statutory interpretation argument because, you know, the statute that we are talking about, it uses different terms for property and losses; and the interpretation that discovery of further losses necessarily means discovery of further property, different property that wasn't included, it would collapse the meaning here of losses and property in a way that is not consistent with the statutory canon of interpretation; that different words have different meanings.

So anyway, I think I can stop there, and I'm happy to answer more questions on this.

THE COURT: No. I understand -- I appreciate your -- your explanation on further losses.

So, let me hear from Defense Counsel, Ms. Chuang, maybe I will start with you or Ms. Wirsching. I will start with

1  whoever wants to go first.

2        **MS. CHUANG:**  Ms. Wirsching can go ahead.

3        **MS. WIRSCHING:**  I will let Ms. Chuang go first since

4  she submitted the most recent opposition.

5        **MS. CHUANG:**  Okay.  So I think the Court -- what the

6  Court indicated at the beginning of the hearing is correct;

7  that 3664(d)(5) is, the provision about subsequently discovered

8  further losses, just does not apply to this situation.

9      The statute does not say "discovery of further value of

10  losses."  It doesn't say "discovery of further value of

11  property."

12      And the wording in the statute is very clear.  It is

13  "subsequently discovered further losses."

14      These were previously known losses.  If the Court adopted

15  NA's proposal of how to read this statute, then conceivably

16  restitution would never be finalized.

17      Even if we are talking about a purely monetary loss,

18  right, something that doesn't have to be converted to

19  dollars -- so let's say $500 from someone's bank account is

20  stolen, victims conceivably far past sentencing can argue that

21  due to inflation that the value of their $500 back then is now

22  worth $2,000 in today's dollars and there would be successive

23  petitions with these changes of discovery of further value of

24  losses.  That simply is not supported by the statutory language

25  here.

So, Your Honor, I think the Court is correct in that it can't amend the restitution order under these circumstances.

With regard to the CVRA, it's very clear in the language there that the right to full and timely restitution is as provided in law. And as cases have interpreted that, that means as provided for in the MVRA, 3664(d)(5).

So I think that's -- it's a unique situation, this case, but the MVRA doesn't -- it doesn't apply -- it doesn't allow the amendment of a restitution order after a final restitution order was entered after discovery -- after victim's discovery that the Government requested the wrong restitution amount or after discovery of an incorrect restitution award. That's not what the statute says.

And I think if the victims think they have the right under the CVRA to pursue a writ of mandamus in the Ninth Circuit, then that is, perhaps, the path that they need to take; but in terms of amending the restitution order in this manner, it's simply not permitted by the law.

And finally, just I want to briefly address -- you know, I understood that remission from forfeiture and restitution to someone who is not a lawyer may be confusing; but hundreds of criminal cases come through this courthouse every day, Your Honor, many of them with victims, most of whom are lay people who are not legally trained; and they respond to the restitution notices. They file restitution claims in response

to the Government's notices.  Many of them may also submit remission for forfeiture petitions as a separate proceeding.

So, to say that submitting a forfeiture of petitions that should somehow suffice for the restitution claim that -- that the Government has listed in information for but never got a response from, I don't think that's sufficient here.

And then also, I think the order of the sentencings does play a role here.  So Mr. Ditman, my client, was the last one sentenced.

Mr. Faulk was first sentenced in mid-August.  Mr. Hared was sentenced in -- at the end of August.  And Mr. Ditman's sentencing date was nearly six weeks later in the middle of October.  The restitution awards are the same for these two victims in all three of these related cases.

So they were alerted at the -- after the very first sentencing of Mr. Faulk in mid-August of their restitution awards but still didn't respond to any of the notices from the Government or attempt to submit to the prosecuting attorney any information saying that this restitution award was wrong and to try to submit materials for the following two sentencings including Mr. Ditman's.

**THE COURT:**  Ms. Wirsching.

**MS. WIRSCHING:**  I would just agree with everything that Ms. Chuang just said.  If the victims -- my understanding is that if the victims seek to do so, they can file for writ of

mandamus to try and see what they can get there; but I really agree with the Court; that there is just not a procedure post-sentencing, post-restitution order for them to come back in in this situation and request that everything be changed.

THE COURT: Okay. Ms. Shifman, do you have anything that you would like to add?

MS. SHIFMAN: Your Honor, we filed a joinder on behalf of Mr. Hared and both Defendants' filings. They have covered it both in oral argument and in their filings.

I just want to note for the record, that the Court transferred jurisdiction of Mr. Hared's case to the district in which he resides for supervision.

I had a chance to look at not all of the cases involving 3605, which is the statute under which the transfer was sent to Arizona. I would say tentatively that the Court still maintains jurisdiction to hear this matter as to Mr. Hared, but I wanted to just point out that that -- if I'm wrong about that, that would be an issue that Mr. Hared could potentially take to the Ninth Circuit. It would not be waived even if I stated on the record that I don't -- incorrectly.

THE COURT: I appreciate that. My understanding of the transfer was really just a transfer of supervision. It wasn't -- and I don't think -- I don't know how it would work any other way but -- but I appreciate the issue.

MS. SHIFMAN: Thank you.

1    **THE COURT:**  Mr. Farnham, back to you.  What more do

2    you want me to be thinking about?

3    **MR. FARNHAM:**  Thank you, Your Honor.  Just a few

4    things.

5    I want to respond to a few arguments that were made by

6    Defense Counsel.

7    I think the sort of, like, the creative horribles or the

8    potential effects of Your Honor re-visiting this in a limited

9    situation here for these particular victims is not going to

10   impact other cases.

11   We are certainly not talking about further losses now

12   encompassing appreciation of property beyond the restitution

13   order.

14   This was so far wrong.  I think we are all in agreement

15   that the -- that the MVRA -- excuse me -- the restitution

16   statute was not appropriately applied given that there was a

17   knowable number of Ethereum that were stolen from both of these

18   victims, and the statute says it should have been the value at

19   the time of sentencing.

20   So, we are not talking about a situation where every time

21   a piece of property appreciates in value after the crime or

22   sentencing, that restitution orders are all up in the air.

23   This is a -- this was a -- it's a knowable error and

24   mistake, and I say that not only in the terms of -- the number

25   is wrong.  The restitution should be different.

1    **THE COURT:**  But, Mr. Farnham, why -- I mean, I agree

2    with you about how wrong this was.  It should have never have

3    happened, but it did happen; and I don't know why other victims

4    who are dissatisfied with their -- with the restitution orders

5    couldn't under similar theories come back to the district court

6    to deal with that?  I think that's one of the reasons why

7    criminal restitution -- the rights of a district judge -- and I

8    always like to say that I can do anything I want to.  That's --

9    that's the power of a federal district judge, but it's not

10   really.  And it is circumscribed particularly in criminal

11   restitution matters.  So that's -- that's my concern.

12   **MR. FARNHAM:**  Right.  So let me talk, I guess,

13   probably what is the core of the issue.  Quickly on the good

14   faith, Ms. Chuang references the Faulk sentencing on

15   August 17th, I believe.

16   So, to his credit, Mr. NA reached out to the Government on

17   August 22nd to the victim witness to find out what -- where

18   that number came from in Faulk's judgment.

19   So in terms of diligence after the sentencing, there is

20   no -- there is no question about that, I don't think.

21   So let's get to further losses for a second.  I think

22   that -- well, let me put it this way:  First, here is a lesson

23   learned.  I think when we do restitution orders involving

24   stolen cryptocurrency, we should probably say in the

25   restitution order "4,080 Ethereum valued at the time of

sentencing at 7.5 million."

And that's for two reasons. One is to make sure that victims know where the math -- how we got there. Two, so that we can limit the further losses as going to not have to be a different calculation of the Ethereum or a different price or whatever. 4,080 was included in the restitution order. If you want to claim further losses, it better be some different coins.

So, in the future, I think that's a lesson learned is that cryptocurrency restitution orders we should do differently. The value fluctuates so much. It should be crystal clear to the Court, to the Defendants and to the victims exactly what the restitution is in terms of the cryptocurrency. So, that's a lesson learned.

Where to go from here because we didn't do that -- and, again, you know, I'm not sure that -- 99 percent of the restitution cases we all deal with have a dollar value, and the dollar value is known to the victims at the beginning of the crime. It's known to the FBI as they investigate it. It's known at restitution.

This is a unique case where the value of the cryptocurrency that was stolen indisputably many years ago is now worth something different, and restitution's law says you get that amount.

I think that the discovery of that difference of the

conversion -- because that's also part of the crime here is that the Defendants in this case stole cryptocurrency that increased in value dramatically; liquidated it.  It was gone.  Bought their houses and cars.

So there is no way to get that cryptocurrency back.  If it was -- if it was sitting in a wallet that the Government could gain control over, we wouldn't be here talking about that.  It is likely that these two victims would have their same Ethereum back.  It was converted to cash.  There is no way to do that.

And I think it's that back and forth between the property and the value that leads to an argument that I think -- Mr. NA's argument about the statutory interpretation is absolutely -- absolutely right on is that losses has to mean the -- it has to mean the conversion.  It's not the property.

The property, we all know what it was.  It was a fixed amount of Ethereum.  It is the losses that were discovered.  It's the calculation that was discovered to be further, additional, incorrect.

And I think that given the -- I do think it's important in this case in the context of all of these laws for Your Honor to do what Mr. NA calls a victim friendly interpretation of the statute.

If it was in other situations, it might be Defendant friendly.  There might be other rules of comedy involved, but in this one I think victim friendly is important.  And if you

look at it under a victim friendly interpretation, I think further losses can include exactly what we are talking about here. The conversion was incorrect.

    **THE COURT:** All right. Mr. Kobre.

        (No response.)

    **THE COURT:** You are muted at the moment.

    **MR. KOBRE:** Sorry, Your Honor. Very briefly, just I agree with everything that NA and the AUSA said; and we join that argument fully with respect to 3664(d).

  Just to put a finer point, though, I do want to come back to the CVRA argument, Your Honor, because I understand Your Honor's concern about the "as provided in law."

  It's our position that when -- that the CVRA's motion for relief, which was newly created and which the Second Circuit pointed out was -- you know, would have, in the words of the Second Circuit, a significant effect on victim's ability to obtain restitution, does not leave victims only with the MVRA's procedural mechanism.

  So I -- I would argue that the sixty-day limit on the discovery of losses is a procedural mechanism. That procedural mechanism is -- victims now have the ability to bring this new motion that can correct restitution without reference back to that -- to that other -- to prior procedural bars, so to speak.

  And I think that's -- Your Honor, we would argue that that is another path forward here for Your Honor to take. I mean,

when you look at the statute, I think it just jumps out.

The statute says victims have a right to full and timely restitution and when that does not take place, they have the right to bring a motion for relief.

And both of Defense Counsel referred to bringing a mandamus petition; but, again, if we were to go up on mandamus now, I would -- my suspicion would be that the Court of Appeals is going to send us right back down to Judge Orrick and say in the first instance this motion has to be decided by the district court. And then if there is an unsatisfactory decision there, come back to us on mandamus; but that's kind of where we are right now. That's our argument.

**THE COURT:** And that -- that -- if I stick with my interpretation, that would be fine by me because the -- because -- not that this is a -- it's still not totally straightforward in my mind, but I naught NA's description of things I credit completely. And so that would be fine. It is just a question of what authority I have got, so...

**MR. KOBRE:** Very briefly --

**THE COURT:** You said "very briefly" the last time. Aren't you --

**MR. KOBRE:** Well, I just -- so victim JD has indicated he would like to just say a few words to Your Honor. If at some point before Your Honor adjourns he can have that opportunity.

**THE COURT:** I will let you do that right now.

**MR. KOBRE:** Go ahead, JD.

**VICTIM JD:** Probably best to read it because I just want to make sure that the language is respectful.

If it pleases the Court, I would just like to point out that the failure of which occurred on the part of the victims, the reason why we are gathered here today, is because several e-mails which looked very similar -- every single time a court date was changed, we would receive an e-mail whose format looked almost identical to all the many, many e-mails. We are talking about over a span of many, many years -- but one of them looked different than the other ones and because we didn't click on a link in that e-mail, we are here today.

But all of the remission instructions we received by mail. It was clear to the victims that these were special somehow or different. These were a different type of instructions, but then the restitution instructions, they looked like every single time a hearing was rescheduled throughout COVID, they looked the same unless you seriously took the ten minutes to read them and think carefully about them.

And the reason why we are here today is because the victims didn't carefully read that e-mail and think about it. And it's like -- and we have -- you know, NA is a lawyer.

So, if -- we would not be here if I had received those instructions by mail because I would have read them or if I had

received a phone call instructing me what I was required to do, you would not be here. That's it.

      **THE COURT:** Okay. I credit all of that as well. All right. And, NA, I will give you the last word. Is there anything further that you would like to say?

      **MR. ANDREWS:** I just wanted to highlight that I -- I did -- like, so, sorry. Start again.

    As Mr. Farnham mentioned, from the time after restitution to Mr. Ditman's sentencing, I was in communication with a number of different people including at the FBI and the DOJ to figure out what was going on, and I had communications out to Mr. Leach about exactly what could be done to fix the restitution, if there were any avenues, right around the time of Mr. Ditman's sentencing.

    It wasn't clear at that point whether or not -- as you are saying today, whether or not I had an option to correct the restitution or, you know, again in hindsight, maybe I needed to attend all of the sentencing hearings to make that argument in person, but I was -- I was working on that.

    And along those lines, I just wanted to emphasize what we are talking about in this specific interpretation of further losses, we are talking about -- we are arguing that there is good cause here, and it's a limited scenario where we have a clear property that was communicated and the value that was missed is the concern.

So I just wanted to kind of reiterate again that this is not a scenario where we are arguing for an at-will right for victims to come after the fact and challenge any restitution that they are frustrated with.

This is a limited situation where we have -- the victims have submitted the correct property to the Government on multiple occasions.

That property was not valued as the law said and the discovery of that misvaluing, which omitted a huge amount in further losses, was discovered after restitution was ordered.

I think those circumstances are pretty specific. And, as you have mentioned, they may be enough to -- to support a showing of good cause in this case.

So this -- I really wanted to emphasize we are not asking for you to create kind of a big loophole for any frustrated victims to come forward and continue using the resources of the court; but as you can tell from victim JD's comments, there is a lot going on in the process of these criminal cases, and it may be the case that there are a lot of victims who just don't understand what's going on; but they don't -- they don't file these types of petitions after the fact. They just kind of go on with their life.

And, as Mr. Farnham mentioned, in most cases where the dollar amounts are clear, the harm is not very significant to those victims.

1    It may be correct but this is a case where there's a huge

2    delta between what was ordered and what needed to be ordered

3    under the Mandatory Restitution Act.

4         **THE COURT:**  There is no doubt about that and what you

5    just -- what you said a little bit earlier also surprises me

6    very much; that you were having -- you had some conversations

7    with Mr. Leach, who I have a lot of confidence in as a -- I

8    don't -- I just -- I don't understand how people fell down on

9    this job.  Just don't.

10   So I'm going to take all this in, and I will get an order

11   out as soon as I can.  And then we will see where we go.

12   Thanks very much.

13         **MR. FARNHAM:**  Thank you, Judge.

14         **MR. KOBRE:**  Thank you, Your Honor.

15         **MS. WIRSCHING:**  Thank you, Your Honor.

16         **MS. SHIFMAN:**  Thank you.

17              (Proceedings adjourned at 3:16 p.m.)

18                        ---oOo---

19

20

21

22

23

24

25

**CERTIFICATE OF REPORTER**

          I certify that the foregoing is a correct transcript

from the record of proceedings in the above-entitled matter.


DATE:   May 9, 2024




          _____

          Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
          United States District Court - Official Reporter